**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| **Pedro J. Blasini-Sanjurjo,** | |
| *Plaintiff*, | |
| **v.** | Civil No. 25-01369 (MAJ) |
| **Commonwealth of Puerto Rico et al.,** | |
| *Defendants.* | |

**<u>OPINION AND ORDER</u>**

## I.    Introduction

Pedro J. Blasini-Sanjurjo ("Plaintiff") brings claims under 42 U.S.C. § 1983 against Coralys Cruz Domínguez, Director of the Puerto Rico Sex Offender Registry, Raquel Colón, Deputy Compact Administrator and Commissioner for the Puerto Rico Department of Corrections, and Rosaura Pérez, Compact Office Director for the Puerto Rico Department of Corrections (collectively, "Defendants") alleging violations of his rights under the Fifth, Sixth, and Fourteenth Amendments of the Constitution. (**ECF No. 54 at 2–3 ¶¶ 6–8, 30–45 ¶¶ 172–247, 46–48 ¶¶ 248–262**).[1] The dispute arises from Plaintiff's obligation to register as a sex offender with the Puerto Rico Sex Offender Registry ("Registro de Ofensores Sexuales") (hereinafter "the Registry"). According to Plaintiff, Defendants have imposed on Plaintiff a series of arbitrary registration requirements that are retaliatory and punitive in nature.

---

[1]    Plaintiff filed a complaint on July 14, 2025. (**ECF No. 2**). Several months later, on September 9, 2025, Plaintiff filed an amended complaint (hereinafter the "Complaint"). (**ECF No. 54**). Defendants responded to the Complaint on January 12, 2026, moving to dismiss the Complaint for failure to state a claim for which relief may be granted. (**ECF No. 63**).

Civ. No. 25-01369 (MAJ)                                                              Page 2

Defendants move to dismiss the Complaint under Rule 12(b)(6) for failing to state a claim for which relief may be granted. (**ECF No. 63**). Plaintiff opposes the motion. (**ECF No. 66**).[2] For the reasons that follow, the Court **GRANTS** the motion.

## II.    Background

In 2014, Plaintiff plead guilty to possessing child pornography in violation of Pennsylvania state law. (**ECF No. 54 at 3−4 ¶¶ 11−13**). Accordingly, Plaintiff is required by law to register as a sex offender. (**ECF No. 54 at 5 ¶¶ 16−17**); *see* 4 L.P.R.A. § 536 *et seq*. In compliance with that requirement, Plaintiff first registered as a sex offender with the Registry in March 2015. (**ECF No. 54 at 6 ¶¶ 22−23**). Plaintiff was initially categorized as a "Tier I" offender by the Registry. (**ECF No. 54 at 6−7 ¶¶ 23, 28**). Required to periodically appear before the Registry and update his registration status, Plaintiff appeared before the Registry annually between 2015 and 2020 and renewed his status as a Tier I offender. (**ECF No. 54 at 11 ¶ 56**). Then, on December 2, 2021, shortly after Plaintiff had appeared as a witness for the defense in an unrelated criminal case involving allegations of aircraft part fraud, Plaintiff was summoned by the Registry and informed that he had been re-designated as a "Tier II" offender. (**ECF No. 54 at 12 ¶¶ 57−60**). Tier II offenders are subject to more onerous registration and supervision requirements, including that they appear bi-annually for registration updates. (**ECF No. 54 at 12−13 ¶¶ 63−64**). According to Plaintiff, he "did not receive any notice that his Registry level was adjusted from Tier I to Tier II and the reasons for the adjustment[,]" nor was he "afforded an opportunity to challenge the determination[.]" (**ECF No. 54 at 12 ¶¶ 61−62**). In each of his subsequent bi-annual appearances before the Registry since

---

[2]    After Plaintiff filed the Opposition to the Motion to Dismiss, Defendants filed a reply brief. (**ECF No. 70**).

Civ. No. 25-01369 (MAJ)                                                              Page 3

February 2022, Plaintiff was designated as a Tier II offender. (**ECF No. 54 at 14 ¶¶ 71–121**).

According to Plaintiff, his designation as a Tier II sex offender was only the first shoe to drop in a sustained campaign of harassment and retaliation for his participation in the aircraft parts fraud case. Since the change to his registration status, agents of the Registry have allegedly "visit[ed] the workplaces where [Plaintiff] obtains employment" to inform his colleagues "that there is a [sex offender] working with them, thereby causing his termination." (**ECF No. 54 at 23 ¶ 135**). Agents of the Registry have also visited "the workplaces of [Plaintiff]'s wife[.]" (**ECF No. 54 at 23 ¶ 136**). In addition, agents for the Registry have allegedly "visit[ed] the school of [Plaintiff]'s son" to inform "principals, directors, teachers, and parents of students that [Plaintiff is a registered sex offender] and that they need to take safety precautions[.]" (**ECF No. 54 at 23–24 ¶ 137**). So too have agents visited "the communities wherein [Plaintiff] has resided" to inform other residents that Plaintiff is a registered sex offender. (**ECF No. 54 at 24 ¶ 138**). Plaintiff alleges that the Registry has initiated on average twenty such contacts per year since 2021, the year that his registration status was changed to Tier II. (**ECF No. 54 at 24–26 ¶¶ 142, 148**).

Based on these allegations, the Complaint raises multiple constitutional challenges to the actions of the Registry. In the Opposition to the Motion to Dismiss, Plaintiff abandons most of those claims.[3] Nevertheless, two claims remain. First, Plaintiff argues

---

[3]    Plaintiff abandons all but two of the claims set forth in the Complaint. *See* D.P.R. LOC. CIV. R.7(b) ("Unless within fourteen (14) days after the service of a motion the opposing party files a written opposition to the motion, the opposing party shall be deemed to have waived any objection to the motion."); *NEPSK, Inc. v. Town of Houlton*, 283 F.3d 1 (1st Cir. 2002) (affirming district court's authority to enforce identical local "deemed waiver" rule by dismissing complaint without addressing the merits of the motion to dismiss). First, Plaintiff alleges in the Complaint that he "is entitled to meaningful process in which to argue that the definition of sexual relations under the Puerto Rico Penal Code does not reach all of the instances reached by the Pennsylvania Penal Code and that therefore, his offense is not subject to registration under the Registry." (**ECF No. 54 at 30–31 ¶ 176**). In the Opposition to the Motion to Dismiss, Plaintiff

that he was deprived of "due process when his registration was changed from Tier I to Tier II [on] December 2, 2021" without any prior notice or an opportunity to challenge the redesignation of his status as a sex offender. (**ECF No. 54 at 31 ¶ 179**). Second, Plaintiff argues that Defendants have violated his due process rights by refusing to certify to the Pennsylvania Department of Corrections that he has complied with the terms of his probation, which Plaintiff says is a necessary pre-condition to his eligibility for early termination of probation. (**ECF No. 54 at 44–45**).

### III.    Legal Standard

Defendants move for dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure, asserting that the Complaint fails "to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). "Affirmative defenses, such as the statute of limitations, may be raised in a motion to dismiss under [Rule] 12(b)(6), provided that the facts establishing the defense [are] clear on the face of the plaintiff's pleadings." *Santana-*

---

abandons this claim. (**ECF No. 66 at 12 ¶ 43**) (clarifying that Plaintiff "is not questioning the validity of his obligation to register"). That claim is therefore dismissed.

Second, Plaintiff alleges that he has a due process right to challenge the substantive consequences of his Tier II registration status, such as "the frequency of citations for Registry profile updates," (**ECF No. 54 at 33–34**), "the amount of contacts compelled or initiated by agents," (**ECF No. 54 at 34–36**), the alleged "punitive effects" of such frequent contacts, (**ECF No. 54 at 36–38**), the requirement that he not "establish residence within 500 feet of . . . facilities which provide childcare services," (**ECF No. 54 at 38–40**), and the requirement that he "report any travel outside of Puerto Rico to the Registry." (**ECF No. 54 at 40–44**). To the extent that Plaintiff intends to challenge the substantive constitutionality of imposing such requirements on a convicted sex offender, he abandons those claims in the Opposition to the Motion to Dismiss. (**ECF No. 66**). Any such claims raised by the Complaint are therefore dismissed. To the extent that Plaintiff challenges such conditions as collateral consequences of his designation as a Tier II offender, the Court treats these claims as indistinct from his argument that he is entitled to notice and an opportunity to challenge his Tier II status. *See infra* Section III.a.

Third, Plaintiff alleges that the requirements imposed on him by the Registry "are not collateral" to his underlying conviction and "are punitive in nature," and that they therefore violate the Sixth Amendment, which requires that a "criminal defendant . . . be apprised of all significant or substantial consequences of entering a plea of guilty." (**ECF No. 54 at 45–48**). In the Opposition to the Motion to Dismiss, Plaintiff also abandons this claim. It is therefore dismissed.

Civ. No. 25-01369 (MAJ)    Page 5

*Castro v. Toledo-Davila*, 579 F.3d 109, 113–14 (1st Cir. 2009) (citations and quotations omitted).

To resolve a 12(b)(6) motion, federal courts follow a two-step method. First, the court must "isolate and ignore statements in the [counterclaim] that simply offer legal labels and conclusions or merely rehash cause-of-action elements." *Schatz v. Republican State Leadership Comm.*, 669 F.3d 50, 55 (1st Cir. 2012). A counterclaim need not include detailed factual allegations, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Second, the court must take the remaining "well-[pleaded] . . . facts as true, drawing all reasonable inferences in the pleader's favor, and see if they plausibly narrate a claim for relief." *Schatz*, 669 F.3d at 55 (citations and quotations omitted). In addition to the well-pleaded facts presented on the face of the Counterclaims, "the court may consider matters fairly incorporated within the [pleadings] and matters susceptible of judicial notice." *Andrew Robinson Int'l, Inc. v. Hartford Fire Ins. Co.*, 547 F.3d 48, 51 (1st Cir. 2008).

### IV.    Analysis

#### a. Plaintiff's due process claim is barred by the statute of limitations.

Plaintiff and Defendants disagree as to whether Plaintiff has a cognizable due process right to challenge his designation as a Tier II sex offender under Puerto Rico law. The Court need not resolve this dispute, however, because the statute of limitations on Plaintiff's claim has expired.

Civ. No. 25-01369 (MAJ)                                                                 Page 6

Defendants raise a statute of limitations defense in their Answer to the Complaint. (**ECF No. 71 at 50 ¶ 8**).[4] "Section 1983 claims borrow the forum state's statute of limitations for personal-injury actions." *Alamo-Hornedo v. Puig*, 745 F.3d 578, 580–81 (1st Cir. 2014) (citing *City of Rancho Palos Verdes v. Abrams*, 544 U.S. 113, 123 n.5 (2005)). "For this purpose, Puerto Rico is the functional equivalent of a state." *Id.* (citing *Santiago v. Puerto Rico*, 655 F.3d 61, 69 (1st Cir.2011)). In Puerto Rico, the limitations period for personal-injury actions is one year. *Id.*

"Federal law determines the date on which the statute of limitations begins running." *Marrero-Gutierrez v. Molina*, 491 F.3d 1, 5 (1st Cir. 2007). Under federal law, Section 1983 claims "accrue when the plaintiff knows, or has reason to know, of the injury on which the action is based." *Id.* (citations and quotations omitted). "A claimant is deemed to 'know' . . . at the time of the act itself and not at the point that the harmful consequences are felt." *Id.* (quoting *Chardon v. Fernandez*, 454 U.S. 6, 8 (1981)). Plaintiff's claims therefore stem from December 2021, when he was summoned by the Registry and informed that he had been re-designated as a "Tier II" offender. (**ECF No. 54 at 12 ¶¶ 57–60**).

Under "certain narrow conditions[.]" it is possible that for a plaintiff to "recover for injuries that occurred outside the statute of limitations[.]" *Pérez-Sánchez v. Pub. Bldg.*

---

4      Although Defendants do not address the statute of limitations issue in the Motion to Dismiss, they preserved the defense by raising it in the Answer, which was filed shortly after the Motion to Dismiss. It is therefore proper for the Court to rule on the statute of limitations issue: even if it may be argued that Defendants forfeited the defense by originally failing to raise it in their Motion to Dismiss, there is no argument that Defendants waived the defense since they expressly asserted the right in a subsequent pleading. *See United States v. Olano*, 507 U.S. 725, 733 (1993) ("[F]orfeiture is the failure to make the timely assertion of a right, waiver is the intentional relinquishment or abandonment of a known right."); *see also Núñez-Pérez v. Escobar-Pabón*, 133 F.4th 33, 42 (1st Cir. 2025) (noting that although "a district court would not be at liberty" to address a statute of limitations defense *sua sponte* "should a State intelligently choose to waive" the defense, "a federal court . . . [does have the] authority to resurrect forfeited defenses") (quoting *Wood v. Milyard*, 566 U.S. 463, 471 n.5 (2012); *Day v. McDonough*, 547 U.S. 198 (2006)) (internal quotations omitted).

*Auth.*, 531 F.3d 104, 107 (1st Cir. 2008). This narrow equitable exception to the statute of limitations is known as the "continuing violations" doctrine, which "allow[s] [a] suit to be delayed until a series of wrongful acts blossoms into an injury on which [the] suit can be brought." *Id.* (citations and quotations omitted). "The doctrine is routinely applied in actions arising from hostile work environment allegations," since such claims are "comprised of a series of separate acts that collectively constitute one unlawful employment practice." *Navarro-Colón v. Rodríguez-Mulet*, 582 F. Supp. 3d 5, 16 (D.P.R. 2022) (citations and quotations omitted); *see also Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002) (explaining that "discrete discriminatory acts are not actionable if time-barred, even when they are related to acts alleged in timely filed charges"). The doctrine may also be applied to Section 1983 claims raising alleged due process violations, but it is only applied sparingly. *See, e.g., id.* Crucially, "it does *not* allow a plaintiff to avoid filing suit so long as some person continues to violate [his] rights." *Id.* (citations and quotations omitted). "A continuing violation is occasioned by continual unlawful acts, not by continual ill effects from an original violation." *Bonilla v. Trebol Motors Corp.*, 913 F. Supp. 655, 659-60 (D.P.R. 1995). Where the conduct giving rise to a claim is a "discrete . . . act [that] . . . does not require repeated conduct to establish an actionable claim[,]" the doctrine is not applicable. *Tobin v. Liberty Mut. Ins. Co.*, 553 F.3d 121, 130–31 (1st Cir.2009); *see also Gorelik v. Costin*, 605 F.3d 118, 122–123 (1st Cir. 2010) (where state published an online newsletter outside limitations period that gave rise to the plaintiff's claims, continuing violation doctrine did not apply although state continued regularly republishing the newsletter within the limitations period).

Plaintiff does not contend that he is entitled to notice and an opportunity to challenge his Tier II status every time that he appears before the Registry; instead,

Plaintiff argues that it was the decision of the Registry to change his status from Tier I to Tier II that triggered his due process right to notice and a hearing. *See, e.g.*, (**ECF No. 66 at 5 ¶ 7**) (arguing that Plaintiff must be afforded "an opportunity to contest *his conversion* from a Tier I to a Tier II sex offender") (emphasis added). Accordingly, Plaintiff's claim is not one that is "comprised of a series of separate acts that *collectively* constitute one unlawful . . . practice." *Navarro-Colón v. Rodríguez-Mulet*, 582 F.Supp.3d 5, 16 (D.P.R. 2022) (citations and quotations omitted). Instead, although Plaintiff may still be experiencing "the continual ill effects" from the alleged procedural violations committed by the Registry in 2021, his due process claim accrued at that time. *See Bonilla*, 913 F. Supp. at 659-60. The fact that the Registry has renewed Plaintiff's Tier II registration status on a bi-annual basis since 2021 does not rescue Plaintiff's time-barred claim. *See Tobin v. Liberty Mut. Ins. Co.*, 553 F.3d 121, 130–31 (1st Cir.2009) (where the conduct giving rise to a claim is a "discrete . . . act [that] . . . does not require repeated conduct to establish an actionable claim[,]" the continuing violation doctrine is not applicable).

This result is consistent with the reasoning of other federal courts in closely analogous cases. *See Hearn v. McCraw*, 856 Fed. Appx. 493, 496–497 (5th Cir. 2021) (declining to apply the continuing violations doctrine because "[t]he fact that [a sex offender] must register annually is not a 'continuing tort, but rather the continuing effects of an alleged harm'") (quoting *Gorelik*, 605 F.3d at 122–123) (internal quotations omitted); *McGroarty v. Swearingen*, 977 F.3d 1302, 1304, 1307 (11th Cir. 2020) (registered sex offender who sued Florida for "continuing to publish his personally identifiable information on [state] sex offender registry website even after [he] had completed probation and was no longer subject to Florida registration laws" was time-barred because the alleged injury first occurred outside the limitations period); *Lovett v.*

*Ray*, 327 F.3d 1181, 1183 (11th Cir. 2003) (finding continuing violations doctrine inapplicable where a prisoner sued over a time-barred change to his eligibility for parole, even though that change continued to burden the complainant within the limitations period); *McDay v. Paterson*, Civ. No. 09-500, 2010 WL 4456995, at *5 (S.D.N.Y. Nov. 1, 2010) (where plaintiff alleged that the state violated procedural due process at initial sex offender risk level classification proceeding in 1999, the statute of limitations accrued at the time of that alleged violation notwithstanding ongoing effects of the alleged violation). The Court therefore finds that Plaintiff's procedural due process claim arising from the December 2021 change to his sex offender registration status is time-barred. Accordingly, that claim is dismissed.

**b. Plaintiff's claim that Defendants have violated due process by refusing to certify Plaintiff's compliance with sex offender registration requirements to the Pennsylvania Department of Corrections is not subject to dismissal.**

As previously noted, Plaintiff also claims that Defendants have violated his due process rights by refusing to certify to the Pennsylvania Department of Corrections that he has complied with the terms of his probation, which Plaintiff says is a necessary pre-condition to his eligibility for early termination of probation. (**ECF No. 54 at 44–45**). Defendants do not address that claim in the Motion to Dismiss. (**ECF No. 63**). Accordingly, that claim is not subject to dismissal.

**V.    Conclusion**

For the foregoing reasons, the Motion to Dismiss filed by Defendants is **GRANTED**. Plaintiff's lone surviving claim is his claim that that Defendants have violated his due process rights by refusing to certify to the Pennsylvania Department of

Civ. No. 25-01369 (MAJ)                                                    Page 10

Corrections that he has complied with the terms of his probation. All other claims set forth in the Complaint are hereby **DISMISSED**.

It is so **ORDERED**.

In San Juan, Puerto Rico, this 3rd day of August, 2026.

<u>**/s/ María Antongiorgi-Jordán**</u>
**MARIA ANTONGIORGI-JORDAN**
**UNITED STATES DISTRICT JUDGE**